[THE JUDICIARY.]

Orphans' Court. Kent. 1822.

*Ridgely's Notebook IV, 72.*

Monday, August 5; Tuesday, August 6; Wednesday, August 7; Thursday, August 8.

ELIZABETH FARROW v. NATHAN FARROW, JAMES FARROW, SARAH FARROW, ELIZABETH FARROW, and FRANCIS ASBURY FARROW.

Orphans' Court. Kent. August 9, 1822.

*Ridgely's Notebook IV, 72.*

The following are THE CHANCELLOR'S reasons for the judgment rendered on this petition and plea.

By the marriage article, made before marriage, the petitioner agreed to take, in case she should survive her husband Joseph Farrow, one-third of his personal estate in *lieu* and in full satisfaction of her third or portion of his real or personal estate. Before and at the time of this marriage Joseph Farrow was greatly in debt, far beyond the value of his personal estate. He died about December 12, 1821. On January 1 and 2, 1822, all his personal[2] estate was sold by the sheriff on execution process originally issued September 8, 1818, the day of the marriage, and no part of it has been, or can be applied according to this contract. The wife was twenty-one years old at her marriage.

On the part of the respondents, it was contended that the Act of Assembly did not give to this Court jurisdiction in every case of dower; that in many of them very important questions of law may arise, which, if entertained by this Court, may be settled, without going into, and being decided and finally determined by the High Court of Errors and Appeals. And it was suggested, on the allegation of fraud made by the petitioner's counsel, that the Court should send that question to be tried by a jury. Secondly, it was contended that the wife before marriage might bind herself by such an agreement, however precarious it may be, so as to bar her claim of dower.

First as to the jurisdiction of this Court, there can be no question. The "Act respecting devises of lands, joint estates and dower," 5 Del.Laws 174, s. 2, has enacted that "in all cases where a widow may be entitled to dower, the same may be assigned and laid off to her by the orphans' court of the county where the land lies, upon her petition to the said court by the like proceedings and in the same manner as is by law provided in the case of intestate estates, and the cost and charges thereof shall be ordered by the court to be paid by the parties respectively concerned, according to their interests in the said lands, whereof dower shall be so assigned or laid off." There can be nothing clearer than the meaning of the legislature as expressed in this Act. Authority is given in all cases where a widow is entitled, to assign her dower.

By law, in intestacies, no case can arise in which dower may not be assigned by this Court, unless the aid of Chancery may be required. Such has been the construction and practice under the Acts concerning intestates' estates; and the legislature in-

---

[2] At this point, *Ridgely's Notebook IV*, 75, the account of this case is interrupted; it is resumed at *89*.

tended by the late Act to subject all cases of dower, when the demand could be sustained at law, to the same jurisdiction, and to the same course of proceeding, whether the widow's right accrued on an intestacy, or in any other manner. The Act is remedial, and was intended to facilitate the assignment of dower, to lessen the charges, and equitably to divide the expenses among the parties interested. Yet, as there are no negative words in the Act, and none implied, the widow may, according to the nature of her case, resort to any other tribunal which had jurisdiction before the Act was passed. In some cases it may be necessary to apply to Chancery for its assistance, as when she has no title deeds (Talb. 120); or for the discovery of such facts as may enable her to proceed at law, or in this Court; and on an allegation of an impediment thrown in her way in her proceedings at law, Chancery has a right to assume a jurisdiction to the extent of giving her relief for her dower, and if the alleged facts are not positively denied, to give her the full assistance of that Court, she being in conscience as well as law entitled to her dower. *Curtis v. Curtis*, 2 Bro. C.C. 620, 630. *Pultney v. Warren*, 6 Ves. 89. But dower is a legal demand, and the widow's remedy is *prima facie* at law; and wherever she had, or still has a remedy at law, she may apply to this Court by petition and recover her dower.

It has though been suggested that on the allegation of fraud by the petitioner in this marriage contract, this case should be sent to one of the courts of law that the question may be tried by a jury. For what purpose should it be sent to a jury? That another judge may sum up the testimony, and tell the jury what are the conclusions of law upon the facts proved; or is it because a jury is more competent to try the credit of the witnesses, etc.? This Court, it is presumed, can as competently make the proper conclusions upon the facts, as the judge of another court; and as the advantage of a *viva voce* examination may be had here, the credit of witnesses may be as completely and satisfactorily tried here as by a jury. Suppose it were sent to a jury, their finding would not conclude this Court, and more especially the court having appellate jurisdiction. They must hear and decide for themselves. The Act of Assembly warrants no such proceeding; the Intestate Acts countenance no such course; and no instance ever has occurred of an issue being made up and sent to a jury by this Court. The petitioner has a right to insist on a decision of this Court according to all other cases; and it is the more important as the petitioner's interest cannot extend beyond her life, that no unnecessary delay should be interposed. With her life her claim ceases, and she ought not to be delayed by

a new and extraordinary mode of proceeding, particularly as the Act of Assembly limits the Court to the like proceedings as in cases of intestacy.

The principal difficulty has arisen on the plea of the respondents. By that an agreement made before marriage for a collateral satisfaction is set up to bar the petitioner. At common law a jointure was no bar of dower, because no collateral satisfaction could bar a right or title of inheritance or freehold. *Vernon's Case*, 4 Co. 1. Co.Litt. 36.6. 2 Bac.Abr. 140, title, "Dower" F. But now, by the Statute, 27 Hen. 8., c. 10, a jointure made according to the Statute is a bar. Though a collateral satisfaction is not pleadable at law, yet it may be a good bar in equity. 2 Vern. 365. Co.Litt. 36c note 1. 1 Eq.Cas.Abr. 218, pl. 2. 2 Ves.Jr. 122, 129, *Mundy v. Mundy*. And the cases in equity generally arise from some legal bar, or from some peculiar difficulty in prosecuting the claim at law. 2 Bro.C.C. 620, 630. 6 Ves. 89. Mitf.Pl. 110, 111. 1 Madd. 197.

No objection has been made to this plea upon this ground; and the question, as this is the first case of [its] kind, is, whether this plea of an equitable bar should be received by this Court, supposing it to be available in equity. This question must depend upon the character of this Court, and the mode of proceeding. In the Constitution, Art. 6, s. 15, 1 Del.Laws 42, 3 Del. Laws 256, the equity jurisdiction of this Court is spoken of as the only jurisdiction of the Court; and in the Act for establishing an Orphans' Court, 1 Del.Laws 87, s. 8, an appeal is given to the governor for the time being, in equity. All the acts to be performed by this Court are of an equitable nature; and the proceedings are by petition, summons, citation, attachment, imprisonment and sequestration, forms peculiar to a court of equity. The subject matter of the jurisdiction of this Court is such as properly belongs to a court of equity, and no portion of it is such as belongs to a court of common law; unless it be the partition of real estates of intestates among their heirs, as tenants in common, and the assignment of dower. The division of the real estate of intestates among their heirs, as tenants in common is a peculiar case, and is not known at common law, unless among parceners.

This authority was given to the Orphans' Court very early, and has been so continued. The assignment of dower in this case is to be made upon the petition of the widow, and in the same manner as is by law provided in the case of intestates' estates; and the costs are to be paid by the parties according to their interest in the land. This Court, then, is a court of equity as to all matters within its jurisdiction, and whatever is a bar either

at law or in equity may be pleaded. The Act says that, in all cases where the widow may be entitled to dower, the same may be assigned and laid off by this Court. If she is not entitled at law, or if there is any equitable bar, the Court cannot assign it. The Act seems to mean that the whole inquiry should be made by this Court, to ascertain that she has title, before the dower can be assigned. This then brings it to the question [of] right, and as her case altogether rests upon that, the Court should be satisfied that she is entitled before the order is made. Therefore there can be no objection in going into the consideration of the effect of this marriage contract. At the same time, as the question has not been argued, or proposed at the bar, it will be open to discussion in any case which may hereafter arise.

Second, this contract, if fairly made, would certainly be binding on the petitioner. In *Lawrence v. Lawrence*, 2 Vern. 365, Lord Somers decreed that a collateral satisfaction was a good bar in equity. This decree was reversed, not because of any doubt that dower might be barred in equity, but because the devise to the wife was not expressed to be in satisfaction of dower. See Mr. Hargrave's Note 1 to Co.Litt. 36a. In *Davila v. Davila,* 2 Vern. 724, marriage articles were held to bar all demand out of the personal estate under the Statute of Distributions (See 4 Bro. C.C. 506, *Caruthers v. Caruthers* in the note, where this case is cited as law). In *Glover v. Bates,* 1 Atk. 439, a marriage contract, made before marriage with an infant, and which she agreed to after the death of her husband, and after she arrived to the age of 21 years, was held to bar her of her share of the personal estate under the Statute of Distributions, he having died intestate, by the provision that the terms therein mentioned should go to the wife, in full satisfaction and recompense of all right and claim of dower, or any claim, or right by common law, custom of the city, or any other usage, law, or custom notwithstanding. In *Caruthers v. Caruthers,* 4 Bro. C.C. 500, where the question was whether a female infant should be bound by a settlement made on her marriage, it was decided that she should not be bound, because of the uncertainty of the provision made for the wife. But the Master of the Rolls said that if she had been an adult, she might have taken a provision out of the personal estate, or she might have taken a chance, in satisfaction of her dower, acting with her eyes open, but an infant is not bound by a precarious interest.

Mr. Maddock in his treatise, 1 Madd.Ch. 369, sums up the law to be "that any provision, however inadequate or precarious it may be, which an adult, before marriage, agrees to accept, in lieu of dower, will amount to a good equitable jointure." Like-

all other contracts, if she is fully apprised of all the circumstances, if she acts with her eyes open, and has an equal knowledge with the husband of all the facts, so that she may judge of them, and of the probable result of the contract, she certainly should be bound. But if there is any concealment, or suppression of any fact or thing which ought to be communicated, it amounts to fraud and will vitiate the contract. This doctrine is applicable to all contracts. 1 Vern. 19. 1 P.Wms. 239. *Carr v. Carr,* 1 P.Wms. 723. And in the very case of dower, if it be fraudulently or partially assigned by the sheriff, a court of equity will give relief. 1 Vern. 218. 1 Atk. 442. In *Harvey v. Ashley,* 3 Atk. 607, Lord Hardwicke declared that the husband who had entered in a marriage contract with his wife, an infant, was guilty of a fraud in secreting judgments and other debts that were charged upon the estate, and that that was a good ground for relief, not to set aside the whole settlement, but to apply the unsettled estate of the husband, to exonerate the estate settled of the incumbrances which had not been disclosed.

And the case cited by the petitioner's counsel from 2 Com.Dig. 469, title "Chancery," 3 E 2, shows that where a personal estate vested in trustees upon trust to pay £100 *per annum* to a widow in lieu of dower, which proved deficient, though she accepted it for many years, was supplied out of the real estate. This case shows that where something is expected, and considered to be given in lieu of dower, and the consideration fails, the woman shall be otherwise satisfied. And this does not interfere with what was before said, that a woman, an adult, might take any chance or provision, however precarious it may be, acting with her eyes open, in satisfaction of her dower; for the unreasonableness of a contract is no ground to set it aside, if she is of age, perfectly acquainted with her rights, fully aware of what is done, and of all the circumstances which may affect her, and is free from deception.

This is not such a contract as a court of chancery would execute. The husband secreted the debts which both his real and personal estate was bound to satisfy. On September 8, 1818, the date of the contract and marriage, two writs of execution were issued at the suit of the President, Directors, and Company of the Commercial Bank of Delaware, by which his goods and personal estate were all subsequently sold without raising a sufficiency to pay his debts.

According to the evidence, there is no proof that Mrs. Farrow had any notice of the debts. Mr. Farrow had a good deal of conversation with other persons about them, but none of the witnesses bring a knowledge of them home to the wife. Nothing

was said about them when the contract was executed, nor at the time of the marriage, which all happened on the same day. There is a total want of any evidence that she had been informed of his situation. It is evident that she must have expected something as an equivalent for what she abandoned, and therefore, to make the contract valid, justice required that his real situation should have been fully exposed to her. He knew well his embarrassments; and that there could be no reasonable expectation that she would ever receive anything in lieu of her dower. All this should have been explained to her.

The order for assignment of dower must be made. . . .

